Asher 




IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-079-CV





CINDY RENE ASHER,



 APPELLANT


vs.





DESMOND D. AZZOPARDI,



 APPELLEE




 




FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT



NO. C88-509B, HONORABLE FRED A. MOORE, JUDGE PRESIDING



 






 Desmond Azzopardi, possessory conservator of his two sons from a previous
marriage to Cindy Asher, moved that the trial court modify the conservatorship relations by
appointing him managing conservator in lieu of Asher. The trial court did so, after a hearing, and
Asher appeals. We will reverse the trial-court order and render judgment that Azzopardi take
nothing by his motion.



THE CONTROVERSY


 A divorce decree designated Asher managing conservator and Azzopardi possessory
conservator of their two sons, then ages three and five years. At the time the boys lived with Asher's parents in New Braunfels and continued to do so for most of the time until July
1990. During this period, Asher lived at times with her parents and sons and, at other times,
lived elsewhere. The boys also lived part of the time with Azzopardi and his girlfriend Debbie. 
Azzopardi and Debbie had a child in September 1989. They subsequently married and moved to
California in April 1990. 

 In June 1990 Asher and Azzopardi entered into a written agreement under which
she delivered the boys into Azzopardi's possession for a minimum of one year. (1) The boys moved
to California to live with Azzopardi, Debbie, her parents, and her brother. Azzopardi deployed
to Saudi Arabia with his national-guard unit in September 1990 and returned home in May 1991. 
The boys remained in the California household during the interim. (2)

 When she learned of Azzopardi's deployment, Asher attempted to regain possession
of the boys. She succeeded in July 1991. During that period, Asher married her present husband
and has since resided in their home in San Antonio. The boys lived with them for a brief period
before the court-ordered change in conservatorship we now review. 

 In June 1991, while Asher was attempting to regain possession of the boys,
Azzopardi filed a motion to modify the conservatorship relations, asking that he be designated
managing conservator. After hearing, the trial court granted such relief. Asher appeals.



DISCUSSION AND HOLDING


 The trial court based its order on three findings of ultimate fact: (1) there had been
a substantial and material change in circumstances that justified modification of the previous
conservatorship order (in the divorce decree); (2) allowing the children to remain with Asher
(pursuant to the divorce decree) would be injurious to their welfare; and (3) appointing Azzopardi
managing conservator would be a positive improvement for the children. (3) Each of the findings
of ultimate fact was essential before the trial court was authorized to modify the previous
conservatorship order that accompanied the divorce decree. See Tex. Fam. Code Ann. §
14.08(c)(1) (West Supp. 1993). (4) Asher contends the evidence was legally and factually
insufficient to support each finding. Because each finding is essential to the trial-court order, the
order must fail if any finding is not supported by the evidence. 

 Asher's second point of error assails the legal and factual sufficiency of the
evidence to support the trial-court's second finding mentioned above--the finding that "retention
of the present sole managing conservator [Asher] would be injurious to the welfare of the
[children]." Id. § 14.08(c)(1)(B). The inquiry implied by this element focuses upon the
circumstances of the current managing conservator; the circumstances of the possessory
conservator have no direct bearing on the inquiry. In re Marriage of Rutland, 729 S.W.2d 923,
933 (Tex. App.--Dallas 1987, writ ref'd n.r.e.), cert. denied, 488 U.S. 818 (1988). To make the
necessary showing, the movant must prove that a deleterious change has occurred over time and
that continuation of the existing conservatorship relations will do positive harm to the child. John
J. Sampson, Chapter 14. Conservatorship, Possession, and Support of Children, 21 Tex. Tech
L. Rev. 1323, 1404 (1990).

 If we look only to the evidence that tends to support the trial-court finding, we find
the following: Asher moved from place to place after her divorce until she began to live with and,
ultimately married, her present husband; she admitted smoking marihuana in the past but declared
that she no longer did; and Asher's mother testified that she had been concerned about Asher's
previous "lifestyle." Azzopardi testified that Asher's mother was concerned about Asher's lack
of responsibility toward the two boys and that Asher's life had stabilized, but he feared she might
divorce her husband and return to her former "lifestyle," creating instability in the boys' lives. 
Based upon this evidence alone, we conclude there was no more than a scintilla of evidence to
support the trial-court finding that allowing the boys to remain with Asher would be injurious to
their welfare. The sole reference to any injury is Azzopardi's speculation that Asher might obtain
a divorce, might return to her previous "lifestyle," and might thereby create a condition injurious
to the boys' welfare. This series of dependent inferences is too speculative and contingent to
amount to more than a scintilla of evidence on the vital fact of whether allowing Asher to remain
as managing conservator would do positive harm to the children's welfare.

 In the event we are mistaken in the foregoing, we will examine the balance of the
evidence in an inquiry as to the factual sufficiency of the evidence.

 Asher's parents testified approvingly of her present "lifestyle," home, and husband. 
Asher and her husband testified that she had no plans to work outside the home and would like
to devote her energy and time to caring for the boys. A disinterested person testified that her
children played with the two boys in the past and that Asher was a good mother. The evidence
included a report prepared by a county probation officer at Asher's request. (5) The probation
officer stated in the report that Asher and her husband appeared to have a stable relationship, a
fact the probation officer had confirmed by several character references. The officer concluded
that Asher's home was "an adequate and suitable home environment for the children," there was
sufficient income in the household to meet the boys' needs, and the children would be adequately
and properly cared for in the Asher home.

 The evidence also included the written agreement between Asher and Azzopardi
in which she surrendered possession of the boys to him for a minimum period of one year.

 We cannot conclude from the whole of the evidence that Asher's retention of the
managing conservatorship would be injurious to the welfare of the boys. The gist of the evidence
was that Asher's circumstances had changed from one of instability to one of stability, and the
former circumstances coincided in the main with the period the children were in California. The
risk to the children's welfare consisted almost entirely of Azzopardi's speculation of Asher's
obtaining a divorce and returning to her former behavior. We believe, moreover, that the trial
court reached its finding only because it assigned controlling effect to the agreement between
Asher and Azzopardi. This was legally incorrect because the agreement was without controlling
effect.

 We conclude, therefore, that the evidence is legally and factually insufficient to
support the trial court's conclusion of ultimate fact that allowing Asher to remain as sole managing
conservator would be injurious to the children's welfare. Consequently, we are obliged to hold
the trial court abused its discretion when it based its order on that unproven conclusion. We
sustain Asher's second point of error.

 Because of our disposition of the preceding point of error, it is unnecessary to
address the remaining points. We reverse the trial-court order modifying conservatorship and,
owing to our "no evidence" holding, render judgment denying Azzopardi's motion to modify the
conservatorship order.



 

 John Powers, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Reversed and Rendered

Filed: March 3, 1993

[Do Not Publish]

1.   The agreement, entitled "Modification of Custody Agreement," was a private
agreement between the parties. It does not meet the requirements for modification under
the Texas Family Code, which requires that modification of conservatorship result from a
motion filed in the court having continuing, exclusive jurisdiction of the suit affecting the
parent-child relationship. Tex. Fam. Code Ann. § 14.08(a) (West 1986).
2.   During Azzopardi's absence, Nicholas and Daniel exhibited behavioral problems,
for which a school counselor suggested counseling. Debbie Azzopardi, the children, her
parents, and her brother underwent family counseling to reduce stress in the home in
light of the two boys' behavioral problems. The counseling terminated in May 1991 with
a favorable outcome in the counselor's view.
3.   The judge also concluded that it would be in the children's "best interest" for
Azzopardi to be appointed managing conservator and Asher possessory conservator. The
Family Code states the "best interest of the child" is the primary concern of courts in
determining conservatorship. Tex. Fam. Code Ann. § 14.07(a) (West Supp. 1993). The
Code, however, provides little guidance as to what the term "best interest" encompasses;
it provides merely that "[i]n determining the best interest of the child, the court shall
consider the circumstances of the parents." Id. § 14.07(b) (West 1986).
4.   Section 14.08(c)(1) of the Family Code provides that, after a hearing, the court may
modify a decree or order designating a sole managing conservator under the following
circumstance: 


(A) the circumstances of the child, sole managing conservator, possessory
conservator, or other party affected by the order or decree have
materially or substantially changed since the date of the rendition of
the order or decree to be modified; and


(B) the retention of the present sole managing conservator would be
injurious to the welfare of the child; and


(C) the appointment of the new managing conservator would be an
improvement for the child.


 Azzopardi did not seek change of conservatorship based on § 14.08(c)(4) of the
Code, which allows for modification when the managing conservator voluntarily
relinquishes possession and control of a child for more than six months. Nor did the trial
court base its decision in any respect upon that ground. We are bound, of course, to the
ground upon which the trial-court judgment rests, the parties not having directed their
pleadings, evidence, or argument to another ground.
5.   Asher had the report prepared to fulfill a requirement of the agreement between
Asher and Azzopardi. The agreement included a clause that required Asher to provide
proof of "stable employment and an acceptable and adequate environment" before
Azzopardi would return the children to her.